[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
This case had its genesis in four foreclosure actions filed in this court on or about September 15, 1978 against Stanley V. Tucker ("Tucker") plaintiff, owner of four properties located at 65 Amity Street, 69 Amity Street, 963 Capitol Avenue and 38 Whitney Street, all in Hartford, by defendant Northeast Savings, F.A., which was then known as Hartford Federal Savings Loan Association ("Northeast") and four other defendants. Defendant Robert Basine, an attorney, appeared on behalf of Northeast in those actions.
Shortly after commencement of those foreclosure actions, Tucker filed a written motion for appointment of a rent receiver for the four properties, which was granted by the court Hartford Federal Savings Loan v. Tucker, 196 Conn. 172, 173,491 A.2d 1084 (1985), Hartford II"); Hartford Federal Savings Loan v. Tucker, 192 Conn. 1, 469 A.2d 778 (1984). On April 23, 1979, this court ordered a foreclosure by sale of the properties located at 65 Amity Street and 38 South Whitney Street and strict foreclosure on the other two properties. Hartford II, supra, 174. Tucker appealed that judgment, which was overturned on procedural grounds unrelated to the rent receivership process. Hartford Federal Savings Loan v. Tucker, 181 Conn. 607,436 A.2d 1259 (1980) ("Hartford I").
On remand, Tucker asserted special defenses and counterclaims and the case was placed on the trial list. In 1981, the rent receiver resigned and on October 26, 1981 Northeast applied to the court for appointment of a new receiver. Tucker objected, moved for a judgment holding Practice Book 504 through 510 unconstitutional, and applied for appointment of himself as rent receiver. Following a hearing, the court denied Tucker's motions and appointed Plaza Realty as the new rent receiver on December 21, 1981. Hartford II, supra, 175.
Following a trial, final judgments of strict foreclosure on all four properties were entered on August 17, 1983. Eventually, Northeast transferred title to the subject property to defendants Donna Galluzzo and Lorraine Whitehouse, financed by mortgages on the properties to defendant Pace Investment Associates.
Tucker then appealed the four foreclosure judgments to the Connecticut Supreme Court. Hartford Federal Savings Loan Association v. Tucker, 196 Conn. 172, 491 A.2d 1084 (1985) Hartford II"), which appeal was denied. In its decision, the Connecticut Supreme Court held that the two rent receivers had been appointed by the court after notice to Tucker and hearings, CT Page 322 and that those receivers functioned as arms of the court and not of Northeast. Id., 178-79. Tucker then petitioned the United States Supreme Court for a writ of certiorari, which petition was denied at 106 S.Ct 250 (1985). The second rent receivorship continued until after Tucker's appeals were exhausted, and finally ended in June, 1986 ("Response to Special Defenses of Northeast Savings, F.A. and Robert Basine" March 25, 1991, p. 1, "Reply to Special Defenses of Lorraine Whitehouse, Donna Galluzzo and Pace Investments" March 25, 1991, p. 1).
Tucker then filed an action in the United States District Court for the District of Connecticut against the defendants in the instant action other than Pace Investment Associates. In that action, Tucker sought money damages and declaratory relief under 42 U.S.C. § 1983 for deprivation of his due process rights during the course of the four aforementioned foreclosure actions. The District Court, Dorsey, J., granted the defendants' motion to dismiss Tucker's complaint, Tucker v. Northeast Savings, 675 F. Sup. 763, 767-68. (D.Conn. 1987). Tucker's appeal from that ruling to the United States Court of Appeals for the Second Circuit was dismissed, Tucker v. Northeast Savings, 849 F.2d 1468 (2d Cir. 1988), and his petition for a writ of certiorari to the United States Supreme Court was denied, 109 S.Ct 788 (1989).
Tucker commenced this action on or about April 7, 1989, alleging again, in substance, the due process claim he made in federal court. In addition, Tucker's complaint included a second count based upon common law fraud.
On June 2, 1989, defendants moved to dismiss the first count of Tucker's complaint for lack of subject matter jurisdiction. That motion was granted by the court, Corrigan, J., on October 4, 1989. Tucker's appeal from that ruling was dismissed for lack of a final judgment on April 19, 1990. Tucker v. Northeast Savings, 21 Conn. App. 821 (1990). On December 27, 1989 defendants moved to strike the second count of Tucker's complaint. That motion was granted by the court, Maloney, J., on April 6, 1990.
On or about May 3, 1990 Tucker filed a "Substitute Complaint No. 1" in which he substituted a new second count, sounding in abuse of process, in place of his original second count, sounding in fraud, alleging that Northeast and Basine had abused the process of using rent receivers. Defendants moved to strike plaintiff's "Substitute Complaint No. 1" on October 10, 1990 on the grounds that they could not be held liable for the conduct of court-appointed rent receivers. That motion was granted by the court, Purtill, J., on November 19, 1990. CT Page 323
Following that ruling, Tucker filed a "Substitute Complaint No. 2" containing two counts. The first count again sounded in abuse of process, alleging that defendants abused the rent receivership process. The second count, based upon the same facts as the first count, claimed equitable relief. Defendants moved to strike Tucker's "Substitute Complaint No. 2" on December 10, 1990, again on the grounds that they could not held responsible for the conduct of court appointed rent receivers. That motion was granted by the court, Koletsky, J., on December 31, 1990.
In response, Tucker filed his "Substitute Complaint No. 3" on January 9, 1991. This latest complaint again set out a first count (styled court II) based upon abuse of process and a second count (styled count III) based on a claim for equitable relief. Defendants moved to strike Tucker's "Substitute Complaint No. 3" on January 23, 1991. That motion was granted as to the second count (count III), for equitable relief only by the court, Koletsky, J., on February 20, 1991. Defendants then answered the sole remaining count on Tucker's complaint and asserted special defenses of res judicata and statute of limitations. Tucker replied to those special defenses thereby closing the pleadings. On May 30, 1991 defendants moved for summary judgment on the remaining count (count II) of Tucker's Substitute Complaint No. 3. Defendants have filed a memorandum of law and affidavits in support of their motion for summary judgment. Plaintiff filed a memorandum of law and affidavits in, opposition to defendants' motion for summary judgment. This motion was originally heard by Koletsky, J., who denied the motion without prejudice on June 17, 1991, noting "to resubmit w. add'l affidavits. Koletsky, J. to retain jurisdiction over new motion for summary judgment." This motion was reclaimed and appeared on the short calendar on September 3 1991. at which time arguments were heard by the undersigned, subject to clarification by Judge Koletsky as to whether he wished the matter to be reassigned to him. On October 11, 1991, Judge Koletsky, then sitting in New London, issued an order vacating his prior order retaining any jurisdiction of his over this motion.
 I.
At the hearing of September 3, 1991, the court had before it a new affidavit of Robert Basine, filed July 30, 1991, setting forth in detail the purposes for which the rent receivers were sought, namely to protect the properties being foreclosed from waste or loss and denying that any instructions or directions had come from Northeast, either in the appointment or the conduct of the rent receivers. This affidavit is sufficient to lay at rest any questions raised by the plaintiff CT Page 324 with respect to previous affidavits as to the personal knowledge of the affiant or other claimed invalidities. The sole remaining question is whether plaintiff's abuse of process claim is time barred by the three year limitation period of C.G.S.52-577.
 II.
Practice Book 384 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Zichichi v. Middlesex Memorial Hospital,204 Conn. 399, 402, 528 A.2d 805 (1987). "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact; D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434, 429 A.2d 903 (1980); a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. Practice Book 380, 381. Burns v. Hartford Hospital, [192 Conn. 451, 455, 472 A.2d 1257 (1984)]. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. Town Bank Trust Co. v. Benson, 176 Conn. 304, 309, 407 A. 22d 971 (1978)." Strada v. Connecticut Newspapers, Inc., 193 Conn. 313, 317,477 A.2d 1005 (1984). "The test is whether a party would be entitled to a direct verdict on the same facts. Batick v. Seymour,186 Conn. 632, 647, 443 A.2d 471 (1982)." Connell v. Colwell,214 Conn. 242, 246-47, 571 A.2d 116 (1990).
Defendants argue that as a tort claim, abuse of process is governed by the three year limitation period of General Statutes52-577, and that pursuant to plaintiff's pleadings, the conduct complained of ended in June, 1986 and, therefore, plaintiff must have had asserted this claim prior to June, 1989. Defendants argue, that this court states a new cause of action and therefore does not relate back to the original date of the complaint, and also raise several other grounds in support of their motion for summary judgment: (1) defendants have not engaged in any conduct that could amount to abuse of process; and (2) Tucker's complaint is barred by the doctrine of res judicata.
The plaintiff argues "[f]urther that his complaint [was] timely under authority of GS 52-592 [Accidental Failure of suit; allowance of a new action]. Plaintiff does not otherwise address the issue or the three year limitation period of General Statutes 52-577. CT Page 325
The court in Mozzochi v. Beck, 204 Conn. 490, 494,529 A.2d 171 (1987), addressing an action for abuse of process, stated:
 An action for abuse of process lies against any person using "a legal process against another in an improper manner or to accomplish a purpose for which it was not designed." Varga v. Pareles, 137 Conn. 663, 667, 81 A.2d 112 (1951); Schaefer v. O.K. Tool Co., 110 Conn. 528, 532-33, 148 A. 330 (1930). Because the tort arises out of the accomplishment of a result that could not be achieved by the proper and successful use of process, the Restatement Second (1977) of Torts, 682, emphasized that the gravamen of the action for abuse of process is the use of "a legal process . . . against another primarily to accomplish a purpose for which it is not designed . . ." (Emphasis added). Comment b to 682 explains that the addition of "primarily" is meant to exclude liability "when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." See also 1 F. Harper, F. James O'Gray, Torts (2d Ed. 1986) 4.9; R. Mallen V. Levit, Legal Malpractice (2d Ed. 1981) 61; W. Prosser W. Keeton, Torts (5th Ed. 1984) 121.
Our Supreme Court in Travelers Indemnity Co. v. Rubin,209 Conn. 437, 441, 551 A.2d 1220 (1988), addressing the three year limitation period of General Statutes 52-577, stated:
 In addressing the scope of 52-577, we have stated that "[t]he three-year limitation of 52-577
is applicable to all actions founded upon a tort which do not fall within those causes of action carved out of 52-577 and enumerated in 52-584 or another section. Tuohey v. Martinjak, 119 Conn. 500, 506, 177 A. 721
[1935]." Collens v. New Canaan Water Co., 155 Conn. 477, 491, 234 A.2d 825 (1967). Thus, the three year limitation period of 52-577 applies to all actions based on a tort unless there has been a specific statutory exclusion.
Our Appellate Court in Protter v. Brown Thompson Co.,25 Conn. App. 360, 364-65, addressing the statute of limitation pursuant to General Statutes 52-577, similarly stated:
 The applicable statute of limitation provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." General Statutes 52-577. "The exact CT Page 326 wording of the statute, barring the bringing of any action founded upon a tort `but within three years from the date of the act or omission complained of,' pinpoints the basic question here as being just what actually constituted `the act or omission complained of,' . . ." in Butler's claim for indemnification. (emphasis in original). Prokolkin v. General Motors Corporation, 170 Conn. 289, 294, 365 A.2d 1180 (1976) . . . ."' The date of the act or omission complained of is the date when the negligent conduct of the defendant occurs and is not the date when the plaintiff first sustains damage' . . . Id., 297, quoting Vilcinskas v. Sears, Roebuck Co., 144 Conn. 170, 173, 127 A.2d 814 (1956). Because of the distinction created in the Connecticut limitation statute between the injury and the tortious conduct that caused it, it is, indeed, possible, on occasions, to bar an action even before the cause of action acrues." Prokolkin v. General Motors Corporation, supra, 296; see also Vilcinskas v. Sears, Roebuck Co., supra, 174.
In Keenan v. Yale New Haven Hospital, 167 Conn. 284, 285,355 A.2d 153 (1974), our Supreme Court, in addressing amendments to the complaint, stated:
 Amendments relate back to the date of the complaint unless they allege a new cause of action. Baker v. Baker, 166 Conn. 476, 486, 352 A.2d 277 [1974]. An amendment to a complaint which sets up a new and different cause of action speaks as of the date when it is filed. Kelsall v. Kelsall, 139 Conn. 163, 165, 90 A.2d 878 [1952], see Gallo v. G. Fox Co., 148 Conn. 327, 330, 170 A.2d 724 [1961]; Consolidated Motor Lines, Inc. v. M M Transportation Co., 128 Conn. 107, 108, 20 A.2d 621 [1941]. A cause of action, must arise from a single group of facts. Gallo v. G. Fox Co., supra; Veits v. Hartford, 134 Conn. 428, 434, 58 A.2d 389
[1948)] . To relate back to the institution of the action the amendment must arise from a single group of facts. Kelsall v. Kelsall, supra, see Gallo v. G. Fox Co., supra.
It is clear that a cause of action alleging abuse of process is one based in tort, and is governed by the three year limitation period of C.G.S. 52-577. See Travelers Indemnity Co., supra. 441; Protter, supra, 364-65. Tucker has claimed in his replies to defendants' special defenses that "[t]he acts complained of were continuing torts starting in 1979 and continuing until June 1986."
It is clear that pursuant to the plaintiff's pleadings, the CT Page 327 conduct complained of ended in June, 1986 and, therefore, the plaintiff, pursuant to the reasoning of the court in Keenan, Mozzochi, Travelers Indemnity Co., and Protter, would have had to assert his claim for abuse of process by June of 1989. Since it was filed for the first time in May of 1990, it is time barred by the three year limitation period of C.G.S. 52-577.
Motion for Summary Judgment granted.
WAGNER, J.